# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BERRY PERSALL, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-536-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Berry Persall requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 21, 1959, and was fifty-two years old at the time of the administrative hearing (Tr. 32). He has a ninth grade education and past relevant work as a loader operator (Tr.19, 163). The claimant alleges inability to work since January 29, 2011 because of shoulder pain, cervical lumbar problems, high blood pressure, arthritis, degenerative disc disease, and a weak left hand (Tr. 162).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on February 8, 2011. His application was denied. Following an administrative hearing, ALJ Doug Gabbard, II, found that the claimant was not disabled in a written opinion dated December 14, 2012 (Tr. 11-21). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform medium work as defined in 20 C.F.R. § 404.1567(c), *i. e.*, that he could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently, sit for up to six hours and stand or walk for up to six hours in an eight-hour workday, but with the additional limitation of being limited in

reaching in all directions including overhead. The ALJ then stated that if the claimant could perform medium work, he could also perform light and sedentary work (Tr. 15). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, counter clerk and furniture rental clerk (Tr. 20).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate his RFC with regard to his shoulder which further led to errors at step five, (ii) by failing to properly evaluate his credibility, and (iii) by failing to fully develop the record. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant's degenerative disc disease of the cervical spine, hypertensive heart disease, and chronic obstructive pulmonary disease (COPD) were severe impairments, and that his chronic kidney disease, arthritis, and tobacco abuse were nonsevere (Tr. 13-14). Treatment notes from Spiro Family Medical indicate that Dr. David A. Trent, D.O., treated the claimant for chronic pain, COPD, chronic kidney disease, and hypertension (Tr. 242). As to the claimant's left upper arm, he noted on February 24, 2011, that the claimant's pain was aggravated by lifting, movement and pushing, and relieved by rest, but that he had a problem documenting the problem because the claimant could not afford diagnostic testing and had no insurance (Tr. 245). He further stated that the claimant's left shoulder was non-tender to palpation, had severe

pain with motion, and abduction was limited to only 30 degrees without pain (Tr. 247) Treatment notes beginning July 2003 largely reflect medication management, including pain medication (Tr. 242-273). On June 16, 2011, the claimant reported a pain level of 0/10, but he reported pain of 8/10 on October 6, 2011 (Tr. 318). Assessment that day indicated low back pain, chronic kidney disease, high risk medication use, COPD, and hypertension (Tr. 318). By February 9, 2013, physical exam findings were normal, and the claimant's chronic problems were listed as COPD, hypertension, and low back pain (Tr. 312).

The claimant was also seen at Utica Park Clinic by Dr. Beau Jennings, D.O., October 8, 2012. He found that the claimant had "normal musculature, no joint deformities or abnormalities, normal range of motion for all four extremities for age" (Tr. 326). He completed a physical Medical Source Statement of the claimant's ability to do work, and indicated that the claimant could perform work at all levels with no restrictions (Tr. 333-338).

Dr. James Metcalf, M.D., reviewed the claimant's records and concluded that he could perform medium work, except that he could only perform limited reaching on his left side in all directions, due to pain (Tr. 289-295).

In his written opinion, the ALJ thoroughly discussed all the evidence in the record. He cited Dr. Trent's treatment notes, noting they largely consisted of routine medication management with few changes over the years; and he noted Dr. Jennings's MSS findings that the claimant had no limitations upon examination. (Tr. 16-17). Based on Dr.

Metcalf's opinion, he modified Dr. Jennings's findings that the claimant could perform work at all exertional levels to a medium RFC with limited reaching in all directions including overhead, based on the subjective complaints of the claimant (Tr. 17).

The claimant first contends that the ALJ erred by failing to properly determine the limits related to his shoulder, which also calls into question his ability to perform the jobs listed at step five. He asserts that the ALJ failed to specifically describe, *i. e.*, occasionally, frequently, etc., how he was "limited in reaching in all directions" and argued that the problems with his left shoulder prevent him from performing *any* work on a competitive basis. He thus asserts that the RFC should be interpreted to mean that he could never use his shoulder. This is somewhat complicated by a couple of factors: (i) the RFC did not specify how the claimant was limited in reaching, *i. e.*, occasionally, frequently, etc.; and (ii) despite insisting that the claimant could perform medium work with limited reaching, the vocational expert testified that there were no medium jobs available if limited reaching was defined as occasional. The VE did, however, testify that there were two light jobs, counter clerk and furniture rental clerk, that the claimant could perform while only occasionally reaching (Tr. 53).

Contrary to claimant's arguments, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir.2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work

level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545, 416.946. The ALJ found that the claimant was "limited in reaching," and the VE clarified that this meant only occasional reaching. Although it would have been clearer if the ALJ had stated this in his opinion, it is not reversible error where, as here, the ALJ obtained testimony from the VE that there were two jobs the claimant could perform with such a reaching restriction. Despite claimant's argument to the contrary, he points to no evidence other than his own assertion that he cannot reach at all. *See Martin v. Apfel*, 201 F.3d 448, at *1 (10th Cir. 1999) (unpublished table opinion) ("Although the ALJ did not make a specific finding whether claimant's RFC was limited by the need to reach only infrequently, that error, if any, is harmless in light of the VE's uncontroverted testimony that claimant could perform the job of surveillance monitor with such a reaching restriction."). *See also* 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we determine that he or she can also do

sedentary and light work.").

The claimant next contends that the ALJ erred in analyzing his credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 16). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."),

-8-

but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) medical records reflected that the claimant's impairments were effectively controlled by medication; (ii) many of the symptoms the claimant reported to the ALJ and consultative examiner were not conveyed to his treating physician; (iii) the claimant's described daily activities were not as limited as the ALJ expected in light of complaints of disabling symptoms and limitations; and (iv) the claimant's impairments and prescribed medications were largely unchanged from 2008, well before the alleged onset date in 2011 (Tr. 16-19). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Finally, the claimant argues that the ALJ failed to fully develop the record to determine the claimant's "true level of function." It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one

of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Id.* at 361 [citations omitted]. Here, the claimant has not met his burden.

The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**